UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY A. LYONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-2608-B |
| | § | |
| AMERICA'S WHOLESALE | § | |
| LENDER, BANK OF NEW YORK | § | |
| MELLON, CWABS, INC SERIES | § | |
| 2004-3, MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEM, AKA | § | |
| "MERS" AND DOES 1 THROUGH | § | |
| 100, INCLUSIVE POLYMATHIC | § | |
| PROPERTIES INC., BANK OF | § | |
| AMERICA NA, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

In his First Amended Federal Complaint (doc. 34) ("Amended Complaint"), Plaintiff Rickey

A. Lyons seeks to replead his claims for (1) negligent misrepresentation; (2) violation of the Texas

Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation against Defendants

Bank of America, N.A. ("Bank of America"), Countrywide Home Loans, Inc., d/b/a America's

Wholesale Lender ("AWL"), Bank of New York Mellon, CWABS, Inc. Series 2004-3 ("BONY"),

and Mortgage Electronic Recovery Systems ("MERS"). In its Memorandum Opinion and Order

issued on April 15, 2014 (doc. 27) ("April 15 Order"), the Court dismissed Plaintiff's claims without

prejudice based on his failure to make certain essential allegations in accordance with Federal Rules

of Civil Procedure 12(b)(6), 8(a)(2), and 9(b).[1] Finding that Plaintiff's Amended Complaint has not overcome the stated deficiencies and has again failed to state claims upon which relief can be granted, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation against Defendants, as set forth in his Amended Complaint (doc. 34). Plaintiff's claims for failure to provide notice in accordance with the Deed of Trust and Section 51.002 of the Texas Property Code are not affected by the present Order, as they were not dismissed by the Court's April 15 Order. April 15 Order 13–15; Am. Compl. 9–12.

## I.

## BACKGROUND

The facts in this case were recounted in detail in the Court's April 15 Order. To summarize, this case arises out of a dispute concerning Plaintiff's attempt to refinance his mortgage and Defendants' subsequent foreclosure sale of his home. Plaintiff alleges that Defendants' conduct during the foreclosure process was wrongful. Consequently, he is pursuing the following causes of action: (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; (4) damage to credit reputation; and (5) failure to send proper notice regarding the foreclosure, in violation of the Deed of Trust and Section 51.002 of the Texas Property Code. Am. Compl. 1–12. Plaintiff further seeks a declaratory judgment stating that Defendant BONY had no authority to sell his property and that it must refund the purchase price to the buyer and reconvey title to Plaintiff. *Id.* at 12–13. Plaintiff seeks an additional declaratory judgment against Defendant

---

[1] The Court found that Plaintiff stated sufficient facts to support a claim for breach of contract and therefore denied Defendants' Motion to Dismiss with respect to this claim. April 15 Order 13–15.

Polymathic regarding its interest in the property and asks the Court to declare that Polymathic must convey title to Plaintiff or, alternatively, to BONY, who must then reconvey title to Plaintiff. *Id.* at 13.

A.      *Factual Background*

On or about February 13, 2004, Plaintiff Rickey A. Lyons obtained a loan from Defendant AWL for $118,000. Am. Compl. 2.[2] Plaintiff's loan was evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") to a property located at 610 Truman Court, Duncanville, Texas 75137 (the "Property"). *Id.* The Note was an adjustable rate note and, according to its terms, had an initial interest rate of 8.875%. *Id.*; doc. 17-3, Pl.'s Ex. A-1. The Note's rate was subject to change on March 1, 2007 (the "Change Date") and on that day every six months thereafter. *Id.*

In or about February 2007, prior to the Change Date, Plaintiff began to seek refinance options in order to secure a fixed rate note. Am. Compl. 2. During Plaintiff's "inquiries he was informed by his bank that he was unable to secure financing due to a record of late payments on his credit record." *Id.* Plaintiff immediately obtained information regarding his credit report. *Id.* at 3. An October 9, 2007 Credit Score Disclosure indicated that he had serious delinquencies. *Id.* Plaintiff knew these to be false and addressed his concerns to his loan servicer, AWL. *Id.* In November 2007, AWL made corrections to the credit report. *Id.*

Thereafter, Plaintiff again attempted to refinance to a fixed rate note. *Id.* However, he was informed that he could not receive a fixed rate unless he worked through AWL's affiliate, Full

---

[2] Unless otherwise noted, all citations and references to Plaintiff's complaint refer to Plaintiff's First Amended Federal Complaint ("Amended Complaint") (doc. 34).

Spectrum Lending. *Id.* Plaintiff was informed that, because the refinance had not been undertaken earlier, the Property was "upside down." *Id.* In order to refinance at this point, Plaintiff would have to bring $14,000, which was the difference in value of the Property before and after it was devalued. *Id.* However, Plaintiff did not have $14,000. *Id.* Consequently, AWL informed him that it would work with him via the HOPE program. *Id.* In addition, AWL requested three months of on-time payments. *Id.* During this time, the payments under the Note increased from approximately $900 per month to $1,200 per month. *Id.* Nevertheless, Plaintiff made the three months' payments as well as an additional three months' payments.[3] *Id.* at 3–4. Plaintiff was assured that he had been approved for the HOPE program. *Id.* at 4. As a result, his loan payment would be reduced to $775 per month. *Id.* However, Plaintiff never received the paperwork. *Id.*

After Plaintiff attempted to work with the Note's lender and servicer over the course of the following two years, the Property was foreclosed upon in August 2012. *Id.* The Substitute Trustee's Deed, filed pursuant to the foreclosure sale on or about August 7, 2012, lists BONY as the mortgagee. *Id.*; doc. 17-3, Pl.'s Ex. E.

B.      *Procedural Background*

On June 4, 2013, Plaintiff filed his Verified Original Petition in the 134th Judicial District Court of Dallas County, Texas. Doc. 1-3. Defendants removed the case to this Court on July 8, 2013. Doc. 1. Shortly thereafter, Defendants filed their initial motion to dismiss. Doc. 5. On November 4, 2013, following Plaintiff's retention of counsel, the Court denied Defendants' motion

---

[3] While Plaintiff was making payments, he attempted to purchase a surety bond for his car dealership. Am. Compl. 4. Due to the problems with his 2006 and 2007 credit record, he was unable to secure a reasonably priced bond. *Id.*

without prejudice. Doc. 13. In addition, the Court ordered Plaintiff to file his amended complaint with the Court no later than November 15, 2013. *Id.* Plaintiff failed to comply with the Court's order. Accordingly, the Court issued its Order to Show Cause, requiring Plaintiff to explain his non-compliance. Doc. 15. On December 9, 2013, Plaintiff filed his timely response and included an amended complaint, styled as "Plaintiff's Original Federal Complaint" (doc. 17-1), that he had forgotten to file initially. Doc. 17. In addition, Plaintiff attached a copy of a *second* amended complaint, likewise styled as "Plaintiff's Original Federal Complaint" (doc. 17-4), that included claims with respect to Polymathic, which had been inadvertently omitted from the amended complaint (doc. 17-1) that Plaintiff intended to file in November. Doc. 17 at 3. Plaintiff requested that the Court consider the amended complaints. *Id.* The certificate of conference to the response indicated this was opposed by counsel for Defendants BONY, Bank of America, AWL, and MERS. *Id.* at 6. Counsel for Defendant Polymathic could not be reached. *Id.*

On January 6, 2014, Defendants BONY, Bank of America, AWL, and MERS filed a Motion to Dismiss (doc. 21) Plaintiff's Original Federal Complaint (doc. 17-1). In its April 15 Order, the Court dismissed without prejudice Plaintiff's claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation. April 15 Order 14–15. The Court gave Plaintiff leave to replead in order to cure the stated deficiencies, requesting that the refiling be styled as "Plaintiff's second amended complaint." *Id.* at 15 n.6. Plaintiff subsequently filed an amended complaint, styled as "Plaintiff's First Amended Federal Complaint" (doc. 34) on May 16, 2014, in which he reasserted claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; (4) damage to credit reputation; and (5) failure to send proper notice regarding the foreclosure, in violation of the Deed of Trust and

Section 51.002 of the Texas Property Code. Am. Compl. 1–12. Plaintiff further sought a declaratory judgment against Defendants BONY and Polymathic, requesting that the Court declare that they are to reconvey title to the Property to Plaintiff. *Id.* at 12–14.

Defendants BONY, Bank of America, AWL, and MERS subsequently filed an answer to the Amended Complaint (doc. 34) on May 30, 2014, denying certain allegations, admitting others, and reiterating their affirmative defenses to Plaintiff's claims. Doc. 35. They did not, however, indicate that Plaintiff's Amended Complaint did not make substantive changes to the claims that had been previously dismissed by this Court's April 15 Order.

On June 17, 2014, Defendant Polymathic filed an Amended Motion for Summary Judgment, insisting that Plaintiff's request for a declaratory judgment is baseless.[4] Doc. 37. Defendants BONY, Bank of America, AWL, and MERS thereafter filed a Motion for Summary Judgment on August 29, 2014, arguing that Plaintiff has failed to present sufficient evidence to support his claims and noting that the Court had previously dismissed four of Plaintiff's claims in its April 15 Order. Doc. 39. Plaintiff did not respond to the motions for summary judgment within the time permitted, but instead filed a Response on September 29, 2014 without seeking leave of Court or an extension of time to do so. Doc. 41. Consequently, Plaintiff's Response was stricken. Doc. 42. Plaintiff has not sought leave to refile his Response.

The re-pleadings filed in response to the Court's April 15 Order are now ripe for review. After considering Plaintiff's Amended Complaint (doc. 34) and noting its striking similarity to the Original Complaint (doc. 17-1), and in light of the fact that Defendants have moved for summary

---

[4] Defendant Polymathic had filed a Motion for Summary Judgment on May 12, 2014. Doc. 31. The Court denied it as moot in light of Plaintiff's Amended Complaint on June 13, 2014. Doc. 36.

judgment on all of Plaintiff's claims, the Court concludes that it must evaluate whether Plaintiff's Amended Complaint has cured the deficiencies stated in the April 15 Order prior to addressing the arguments presented by Defendants in their respective Motions for Summary Judgment.

## II.

### ANALYSIS

The issue before the Court is whether Plaintiff's Amended Complaint properly repleads the following four claims, which had been previously dismissed by the Court's April 15 Order: (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation. For the reasons that follow, the Court concludes that Plaintiff has made only minor amendments that fail to address the noted deficiencies in the allegations.

A.      *Negligent Misrepresentation*

The Court first considers Plaintiff's claim that Defendants negligently misrepresented that they had given Plaintiff proper notice of the default and foreclosure sale in compliance with Section 51.002 of the Texas Property Code. Plaintiff alleges that AWL "falsely represent[ed] that it had given all required Notices for the sole purpose of proceeding to foreclosure when it had not done so." Am. Compl. 5–6. In addition, Plaintiff alleges that BONY "misrepresents in its Affidavit supporting Substitute Trustees [sic] Deed that 'notice of default was served prior to acceleration of the indebtedness'" and that "'[a]ll obligations and duties of the Mortgage Servicer were performed in the manner required by law and all notices were served on each debtor at the last known address of such debtor.'" *Id.* at 6. Plaintiff argues the misrepresentations were material in that they "formed the basis and authority for a foreclosure sale of the [P]roperty" and made it necessary for Plaintiff to secure counsel to protect his interests in this foreclosure action. *Id.*

To prevail on a claim for negligent misrepresentation, a plaintiff must demonstrate that (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). In addition, "the false information complained of in a negligent representation claim 'must be a misstatement of an existing fact rather than a promise of future conduct.'" *Montgomery v. SunTrust Mortg., Inc.*, No. 3:10-CV-733-F, 2012 WL 1353087, at *6 (N.D. Tex. Apr. 19, 2012) (quoting *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.)).

The Court observes that it dismissed Plaintiff's claim for negligent misrepresentation in its April 15 Order, finding that the claim was barred by the economic loss rule. April 15 Order 6–7. The Court explained that "'[u]nder the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *Id.* (quoting *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 382–83 (Tex. App.—Tyler 2009, pet. denied)). The Court noted that the only losses Plaintiff had alleged were the sale of his home and the retention of counsel to assert his rights with respect to the foreclosure; the Court thus concluded that these losses were only associated with the foreclosure of the Property and were derived from obligations created by the Note and Deed of Trust and the contractual relationship between the parties. Am. Compl. 6–7 (citing *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012)). As a result, the Court held that Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine. April 15 Order

6–7.

Though this claim was dismissed without prejudice, allowing Plaintiff to replead in order to cure the stated deficiencies, Plaintiff has not done so. April 15 Order 7, 14–15. The Court finds that the single, minor addition that appears in Plaintiff's Amended Complaint (doc. 34) is the clarification that Defendants' misrepresentations were material "in that they alleged that [sic] formed the basis and authority for a foreclosure sale of the [P]roperty." Am. Compl. 6. This modification does not allege losses that flow from obligations other than those created by the Note and Deed of Trust or that would exist but for the contractual relationship of the parties. The amendment thus fails to address the issue presented by the economic loss doctrine and does not cure the pleading deficiencies that resulted in the dismissal of Plaintiff's claim. Accordingly, the Court finds that Plaintiff's claim for negligent misrepresentation is barred by the economic loss doctrine and is **DISMISSED WITH PREJUDICE.**

B.      *Violation of the Texas Theft Liability Act*

Next, the Court considers Plaintiff's claim that Defendants violated the Texas Theft Liability Act by "appropriating [his] real property." Tex. Civ. Prac. & Rem. Code. § 134.001, *et seq* (West 2013); Am. Compl. 7. Plaintiff contends he is entitled to the return of funds spent to pay for the Property, actual damages caused by Defendants (including attorneys' fees), as well as uncapped exemplary damages. *Id.*

To prevail on a claim under the Texas Theft Liability Act, a plaintiff must demonstrate that (1) he had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. *See Olufemi-Jones v. Bank*

*of Am., N.A.*, 2013 WL 1482544, at *3 (N.D. Tex. Apr. 10, 2013); Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003; Tex. Penal Code § 31.03(a). Furthermore, the plaintiff must allege that the defendant possessed an intent to deprive the plaintiff of his property permanently or for an extended period of time. Tex. Penal Code § 31.03. "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." *Id.* at § 31.01. "Appropriation of property is unlawful if it is without the owner's effective consent." *Id.* at § 31.01(3)(b)(1).

Again, the Court remarks that in its April 15 Order, it dismissed Plaintiff's claim for violation of the Texas Theft Liability Act. April 15 Order 7–8. In reaching its decision, the Court considered Plaintiff's arguments that Defendants had appropriated the Property by failing to take the steps required by the Deed of Trust prior to foreclosure and by filing documentation in the Dallas County Deed Records that established ownership without having first complied with the terms of the Deed of Trust. *Id.*; doc. 25, Pl.'s Resp. 6. Notwithstanding these clarifications, the Court found that "Plaintiff has failed to allege that he had a possessory right to the Property, or that Defendants intended to withhold the Property permanently or for so long that a major portion of its value or enjoyment would be lost to him." April 15 Order 8. The Court thus held that Plaintiff's allegations were conclusory and did not provide sufficient facts to demonstrate that Defendants intended to deprive him of the Property permanently or for an extended period of time. *Id.*

Even though the Court dismissed Plaintiff's claim under the Texas Theft Liability Act without prejudice and allowed him to cure the noted deficiencies, Plaintiff has failed to do so. *Id.* at 8, 15. In his Amended Complaint (doc. 34), Plaintiff has merely included unnecessary language clarifying what is intended by the phrase "above referenced actions," noting that it designates

"unlawfully appropriating the Property of Rickey Lyons, having not established that Bank of New York et al [sic] complied with the Property Code or the Deed of Trust." Am. Compl. 7. Such cosmetic changes do not remedy the deficiencies noted in the Court's April 15 Order and are thus insufficient to state a claim under the Texas Theft Liability Act. Accordingly, Plaintiff's claim for violation of the Texas Theft Liability Act is **DISMISSED WITH PREJUDICE.**

C.    *Common Law Fraud*

        The Court next turns to Plaintiff's claim of common law fraud, in which he contends Defendants BONY and AWL failed to disclose that pre-foreclosure notices were not provided to him, even though Defendants knew that Plaintiff was an unsophisticated borrower who would not know that the notice requirements under the Texas Property Code and the Deed of Trust had not been met. Am. Compl. 7–8. Plaintiff also alleges that BONY intended to induce Plaintiff to relinquish his claim on the Property by failing to disclose that it did not properly notify him of his default. *Id.* at 8. In addition, Plaintiff claims BONY and AWL made material representations as to their status as lender and in complying with the terms of the Deed of Trust. *Id.* Finally, Plaintiff asserts that BONY intentionally misrepresented that it had given proper notice under Section 51.002 of the Texas Property Code. *Id.* As a result of these alleged fraudulent representations, Plaintiff claims he has suffered pecuniary losses and mental anguish. *Id.*

        "To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). The Court evaluated Plaintiff's fraud claim under the heightened pleading standard imposed

by Rule 9(b) and followed the Fifth Circuit's strict interpretation of the rule as "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (citations and internal quotation marks omitted).

The Court again notes that it dismissed Plaintiff's fraud claim in its April 15 Order. April 15 Order 9–11. The Court found that the fraud claim, like the negligent misrepresentation claim, is barred by the economic loss rule because it is "incident to the contract between the parties and, as such, is not suitable for a tort cause of action." *Id.* at 11 (citing *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625 (N.D. Tex. Aug. 21, 2011) ("Texas courts have consistently prohibited tort claims if the parties' relationship and attendant duties arise from a contract."); *Dewayne Rogers Logging, Inc.*, 299 S.W.3d at 382–83. Because Plaintiff's claim was derived from his contractual relationship with Defendants pursuant to the mortgage and ensuing dispute over the foreclosure, the Court reasoned that the claim was barred by the economic loss doctrine. April 15 Order 11. Moreover, the Court concluded that Plaintiff's allegations fell short of the heightened pleading standard under Rule 9(b) because they did not describe the special relationship with Defendants that would have obliged them to disclose their alleged failure to provide notice. *Id.* at 10; Fed. R. Civ. P. 9(b). The pleadings further failed to state when these alleged misrepresentations were made, how Defendants misrepresented themselves "as Lender," or how Plaintiff relied upon these allegedly fraudulent statements. *Id.*

Like Plaintiff's previous two claims, his fraud claim was dismissed without prejudice, allowing him to replead and overcome the identified defects. April 15 Order 11, 15. Again, Plaintiff has

neglected to do so, instead making slight changes that have no effect on the substance of the allegations and in no way address the economic loss rule or the heightened pleading requirement for fraud claims. *Id.* Apart from a slight change in the phrasing of the allegations, the Amended Complaint (doc. 34) only differs from the Original Complaint (doc. 17-1) in that its discussion of the notice requirement includes a reference to Sections 51.002(b) and (d) of the Texas Property Code. *See* Am. Compl. 8 ("a party failed to disclose a material fact within their knowledge, i.e. that proper notices pursuant to Texas Property Code 51.002(b) and (d) were not provided Plaintiff."). The Court accordingly finds that the repleaded fraud claim does not satisfy the pleading standard and is barred by the economic loss rule. Plaintiff's fraud claim is therefore **DISMISSED WITH PREJUDICE.**

D.      *Damage to Credit Reputation*

        The Court next considers Plaintiff's claim that AWL's negligent reporting resulted in his inability to refinance his loan and in the "loss of valuable business assets in an amount no less than [$100,000]." Am. Compl. 9. In deciphering the grounds for Plaintiff's claim, the Court relied on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s–2, which "governs the distribution of credit reports and 'was crafted to protect an individual from inaccurate or arbitrary information . . . in a consumer report and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Smith v. Nat'l City Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537, at *14 (W.D. Tex. Aug. 23, 2010) (quoting *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989) (internal quotations and citations omitted)). Under the FCRA, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is

inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). A person is further prohibited from furnishing such information if "(i) the person has been notified by the consumer . . . that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *Id.* § 1681s–2(a)(1)(B). As the Court noted in its April 15 Order, despite the lack of Fifth Circuit opinions determining whether a private cause of action exists under Section 1681s–2, district courts in this circuit have held that one does exist. *Bittinger v. Wells Fargo Bank, N.A.*, 744 F. Supp. 2d 619, 629 (S.D. Tex. 2010); April 15 Order 12.

The Court again draws attention to its April 15 Order, in which it dismissed Plaintiff's claim for damage to credit reputation due to the absence of detail regarding AWL's reporting.[5] April 15 Order 11–13. Because "Plaintiff nowhere allege[d] that AWL knowingly conveyed false information to the credit reporting agency," the Court held that he failed to plead a claim under the FCRA. *Id.* at 12. The Court further noted Plaintiff's admission that AWL corrected his credit report once Plaintiff made it aware of its discrepancies. *Id.*

The Court gave Plaintiff the opportunity to replead and address the issues noted in its April 15 Order, but he has failed to do so. April 15 Order 12–15. Perhaps in response to the Court's comment that neither party supplied authority defining the claim of damage to credit reputation, Plaintiff's Amended Complaint (doc. 34) cites to an opinion by the Supreme Court of Texas that had not been previously referenced in the Original Complaint (doc. 17-1).[6] However, the citation

---

[5] The Court did not determine whether a private cause of action exists under the FCRA, but rather stated that "[a]ssuming *arguendo* a private right of action exists, Plaintiff has not sufficiently pleaded a case under the FCRA." April 15 Order 12.

[6] Without providing an explanation as to how this authority addresses the deficiencies noted in the Court's April 15 Order, Plaintiff cites to *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.* for the proposition that

neither articulates a legal basis for the claim of damage to credit reputation nor does it provide the factual allegations necessary to support such a claim. Plaintiff makes no further amendments to the Complaint, thus failing to address the stated pleading deficiencies. Accordingly, the Court finds that Plaintiff has failed to state a valid claim under the FCRA. The claim is therefore **DISMISSED WITH PREJUDICE.**

## III.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's amendments fail to overcome the pleading deficiencies that led the Court to dismiss his claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation in its April 15 Order. Therefore, dismissal of these claims is warranted. This ruling does not affect the remaining claims for failure to provide notice in accordance with the Deed of Trust and Section 51.002 of the Texas Property Code asserted in Plaintiff's Amended Complaint.[7]

Federal policy dictates that cases should be decided "on the basis of the substantive rights involved rather than on technicalities," and as such, a plaintiff must be given an opportunity to state a claim. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 1357 (3d ed. 2004). However, a district court has the discretion to deny the opportunity to replead based

---

the Supreme Court of Texas explained ["t]o prove that credit rating is harmed is to prove nominal damages; not until a loan is actually denied or a higher interest rate charged is there proof of nominal damages." 974 S.W.2d 51, 53 (Tex. 1998). "There must be a showing that such inability resulted in injury and proof of the amount of injury." *Id.*
Am. Compl. 9.

[7] In its April 15 Order, the Court denied Defendants' Motion to Dismiss Plaintiff's breach of contract claim. April 15 Order 13–15. Therefore, the Court will consider this surviving claim when addressing Defendants' Motions for Summary Judgment (docs. 37 and 39).

on, among other things, "[plaintiff's] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Price v. Pinnacle Brands, Inc.*, 128 F.3d 602, 608 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996)).

In this case, Plaintiff has repeatedly failed to allege his claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation in accordance with the Federal Rules of Civil Procedure. After the Court thoroughly examined and dismissed Plaintiff's claims, he filed a complaint that made no material changes and alleged the same operative facts and legal assertions as before. His repeated failure to satisfy the pleading requirements of the Federal Rules of Civil Procedure and state claims for which relief can be granted suggests that all further re-pleading on the four claims in question will be futile.

Accordingly, the Court determines that additional re-pleading is not warranted in these circumstances. Therefore, the claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation, as articulated in Plaintiff's Amended Complaint (doc. 34), are hereby **DISMISSED WITH PREJUDICE**. Final Judgment will be issued following this Order.

SO ORDERED.

Dated: October 16, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE