UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY A. LYONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-2608-B |
| | § | |
| AMERICA'S WHOLESALE | § | |
| LENDER, BANK OF NEW YORK | § | |
| MELLON, CWABS, INC. SERIES | § | |
| 2004-3, MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEM, AKA | § | |
| "MERS" AND DOES 1 THROUGH | § | |
| 100, INCLUSIVE POLYMATHIC | § | |
| PROPERTIES INC., BANK OF | § | |
| AMERICA, N.A., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an Amended Motion for Summary Judgment (doc. 37) filed by Defendant

Polymathic Properties, Inc. ("Polymathic") on June 17, 2014 and a Motion for Summary Judgment

(doc. 39) filed by Defendants Bank of America, N.A. ("Bank of America"), Countrywide Home

Loans, Inc., d/b/a America's Wholesale Lender ("AWL"), Bank of New York Mellon, CWABS, Inc.

Series 2004-3 ("BONY"), and Mortgage Electronic Recovery Systems ("MERS") (collectively,

"Defendants") on August 29, 2014. For the reasons that follow, Defendant Polymathic's Amended

Motion is **GRANTED** and the remaining Defendants' Motion is **GRANTED in part** and **DENIED**

**in part.**

# I.

# BACKGROUND[1]

The facts in this case have been recounted in detail in the Court's previous orders. To summarize, this case arises out of a dispute concerning Plaintiff's attempt to refinance his mortgage and Defendants' subsequent foreclosure sale of his home. Plaintiff alleges that Defendants' conduct during the foreclosure process was wrongful and thus pursued several causes of action against them, some of which have been dismissed by the Court. In his remaining claims against Defendants, Plaintiff alleges violations of the notice requirements established by Section 51.002 of the Texas Property Code and the Deed of Trust. Am. Compl. 1–12. Plaintiff further seeks a declaratory judgment stating that Defendant BONY had no authority to conduct a foreclosure sale of his property and that it must refund the purchase price to the buyer and reconvey title to Plaintiff. *Id.* at 12–13. Plaintiff seeks an additional declaratory judgment against Defendant Polymathic regarding its interest in the property and asks the Court to declare that Polymathic must convey title to Plaintiff or, alternatively, to BONY, who must then reconvey title to Plaintiff. *Id.* at 13.

A.    *Factual Background*

On or about February 13, 2004, Plaintiff Rickey A. Lyons obtained a loan from Defendant AWL for $118,000. Doc. 34, Am. Compl. 2; doc. 17-3, Pl.'s Ex. A-1. Plaintiff's loan was evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") to a property located at

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a contention by one of the parties, these facts are undisputed. Because two Motions for Summary Judgment are before the Court, citations to filings submitted by Defendants Bank of America, AWL, BONY, and MERS (docs. 39 and 40) are styled as "Defs.' Br." or "Defs.' Ex.," while citations to the materials independently submitted by Defendant Polymathic (docs. 37 and 38) are styled as "Def. Polymathic's Br." or "Def. Polymathic's Ex."

610 Truman Court, Duncanville, Texas 75137 (the "Property"). *Id.*; doc. 17-3, Pl.'s Ex. A-2. The Note was an adjustable rate note and, according to its terms, had an initial interest rate of 8.875%. *Id.*; doc. 17-3, Pl.'s Ex. A-1. The Note's rate was subject to change on March 1, 2007 (the "Change Date") and on that day every six months thereafter. *Id.*

In or about February 2007, prior to the Change Date, Plaintiff began to seek refinance options in order to secure a fixed rate note. Am. Compl. 2. During Plaintiff's inquiries, "he was informed by his bank that he was unable to secure financing due to a record of late payments on his credit record." *Id.* Plaintiff immediately obtained information regarding his credit report, which indicated that he had serious delinquencies. *Id.* at 3. Plaintiff knew these reports of delinquencies to be false and addressed his concerns to his loan servicer, AWL. *Id.* In November 2007, AWL made corrections to the credit report. *Id.*

Thereafter, Plaintiff again attempted to refinance to a fixed rate note. *Id.* However, he was informed that he could not receive a fixed rate unless he worked through AWL's affiliate, Full Spectrum Lending. *Id.* Plaintiff was notified that, because the refinance had not been undertaken earlier, the Property was "upside down," and that refinancing would require Plaintiff to tender $14,000, which was the difference in value of the Property before and after it was devalued. *Id.* However, Plaintiff did not have $14,000. *Id.* Consequently, AWL informed him that it would work with him via the HOPE program. *Id.* In addition, AWL requested three months of on-time payments. *Id.* During this time, the payments under the Note increased from approximately $900 per month to $1,200 per month. *Id.* Nevertheless, Plaintiff made the three months' payments as well

as an additional three months' payments.[2] *Id.* at 3–4. Plaintiff was assured that he had been approved for the HOPE program, and that as a result, his loan payment would be reduced to $775 per month. *Id.* at 4. However, Plaintiff never received the paperwork confirming this assurance. *Id.*

After Plaintiff attempted to work with the Note's lender and servicer over the course of the following two years, the Property was foreclosed upon in August 2012. *Id.* The Substitute Trustee's Deed, filed pursuant to the foreclosure sale that took place on or about August 7, 2012, lists BONY (which had been assigned the Deed of Trust in October 2011) as the mortgagee. *Id.*; doc. 17-3, Pl.'s Ex. E, Substitute Trustee's Deed; Defs.' Ex. A-3, APP 021–022, Assignment.

B.    *Procedural Background*

On June 4, 2013, Plaintiff filed his Verified Original Petition in the 134th Judicial District Court of Dallas County, Texas. Doc. 1-3. Defendants removed the case to this Court on July 8, 2013. Doc. 1. On December 9, 2013, Plaintiff filed an amended complaint, styled as "Plaintiff's Original Federal Complaint," in which he asserted claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; (4) damage to credit reputation; and (5) failure to send proper notice regarding the foreclosure, in violation of Section 51.002 of the Texas Property Code and the Deed of Trust.[3] Doc. 17-1, Orig. Compl. 1–11. On January 6, 2014, Defendants BONY, Bank of America, AWL, and MERS filed a Motion to Dismiss (doc. 21) Plaintiff's Original Federal Complaint (doc. 17-1). In its Order (doc. 27) on the Motion to Dismiss

---

[2] While Plaintiff was making payments, he attempted to purchase a surety bond for his car dealership. Am. Compl. 4. Due to the problems with his 2006 and 2007 credit record, he was unable to secure a reasonably priced bond. *Id.*

[3] To avoid confusion and remain consistent with Plaintiff's naming of his filings, the Court styles its citations to this amended complaint (doc. 17) as "Original Complaint" and refers to the subsequent amended complaint (doc. 34) as the "Amended Complaint."

(doc. 21), the Court dismissed without prejudice Plaintiff's claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation. Doc. 27, 14–15. The Court gave Plaintiff leave to replead in order to cure the stated deficiencies, requesting that the refiling be styled as "Plaintiff's second amended complaint." *Id.* at 15 n.6. Plaintiff subsequently filed an amended complaint, styled as "Plaintiff's First Amended Federal Complaint" ("Amended Complaint") on May 16, 2014, restating its claims against Defendants and further seeking a declaratory judgment against Defendants BONY and Polymathic, requesting that the Court declare that they are to reconvey title to the Property to Plaintiff. Doc. 34, Am. Compl. 12–14.[4]

Defendant Polymathic filed the present Amended Motion for Summary Judgment on June 17, 2014, contending that Plaintiff's request for a declaratory judgment is baseless.[5] Doc. 37. Defendants BONY, Bank of America, AWL, and MERS filed the present Motion for Summary Judgment on August 29, 2014, arguing that Plaintiff has failed to present sufficient evidence to support his claims and noting that the Court had previously dismissed four of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 39. Plaintiff did not respond to the motions for summary judgment within the time permitted, but instead filed a Response on September 29, 2014 without seeking leave of Court or an extension of time to do so. Doc. 41. Consequently,

---

[4] Defendants BONY, Bank of America, AWL, and MERS subsequently filed an answer to the Amended Complaint (doc. 34) on May 30, 2014, denying certain allegations, admitting others, and reiterating their affirmative defenses to Plaintiff's claims. Doc. 35. They did not, however, indicate that Plaintiff's Amended Complaint failed to make substantive changes to the claims that had been previously dismissed by this Court's Order (doc. 27) on the Motion to Dismiss (doc. 21).

[5] Defendant Polymathic had filed a Motion for Summary Judgment on May 12, 2014. Doc. 31. The Court denied it as moot in light of Plaintiff's Amended Complaint on June 13, 2014. Doc. 36.

Plaintiff's Response was stricken. Doc. 42. Plaintiff has not sought leave to refile his Response.

In considering the filings related to these motions, the Court noted that many of the claims in Plaintiff's Original Complaint previously dismissed without prejudice by the Court's Order (doc. 27) on Defendants' Motion to Dismiss (doc. 21) reappeared in Plaintiff's Amended Complaint and contained no substantive changes to overcome the stated pleading deficiencies. The Court observed that Defendants moved for summary judgment on all of Plaintiff's claims and determined that before reviewing the Motions for Summary Judgment, it must first evaluate whether the modifications presented in Plaintiff's Amended Complaint did in fact meet the pleading standards under Federal Rules of Civil Procedure 12(b)(6), 8(a)(2), and 9(b). *See* doc. 44. After reviewing the minor amendments made to Plaintiff's Amended Complaint, the Court concluded that Plaintiff's allegations of (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation did not form claims upon which relief could be granted. *Id.* Accordingly, the Court dismissed these four claims with prejudice. *Id.*

The Motions for Summary Judgment are ripe for the Court's review. Therefore, the Court now considers Defendants' respective Motions for Summary Judgment on the remaining claims in Plaintiff's Amended Complaint.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine

issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and []

articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

Plaintiff's failure to timely respond to Defendants' respective Motions for Summary Judgment means that Plaintiff has not designated specific facts showing there is a genuine issue for trial and is, therefore, relegated to its unsworn pleadings, which are not summary judgment evidence. *Bookman v. Shubzda*, 945 F. Supp. at 1002 (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Thus, while Plaintiff's lack of response does not permit the Court to enter a "default" summary judgment, the Court is allowed to accept the evidence presented by Defendants as undisputed. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (holding a party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports her claim). Therefore, the Court accepts Defendants' evidentiary assertions as undisputed. *See Ragas*, 136 F.3d at 458 (noting the court does not have the duty to sift through the record in search of evidence to support a party's opposition to summary judgment); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.17 (5th Cir. 1992) (same); *Denmark v. Cole*, 2005 WL 3293988, at *3 (N.D. Tex. Nov. 30, 2005) ("Because of plaintiff's failure to respond, defendants' evidence is accepted as undisputed and summary judgment may issue to defendants upon a prima facie showing of entitlement.").

## III.

## ANALYSIS

Defendants BONY, Bank of America, AWL, and MERS ("Defendants") move for summary

judgment on Plaintiff's claims of (1) failure to send proper notice regarding the foreclosure, in violation of Section 51.002 of the Texas Property Code and the Deed of Trust; (2) negligent misrepresentation; (3) common law fraud; (4) violation of the Texas Theft Liability Act; (5) damage to credit reputation; and (6) breach of contract. Doc. 39. They further move for summary judgment on Plaintiff's request for declaratory relief. *Id.* Defendant Polymathic likewise moves for summary judgment on Plaintiff's request for declaratory judgment. Doc. 37. As previously noted, the Court dismissed with prejudice Plaintiff's claims for (1) negligent misrepresentation; (2) violation of the Texas Theft Liability Act; (3) common law fraud; and (4) damage to credit reputation, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 44. Therefore, the Court reviews the summary judgment evidence presented on the remaining claims, in turn, below.[6]

A.    *Section 51.002 of the Texas Property Code*

Plaintiff alleges that Defendants violated Section 51.002 of the Texas Property Code by failing to send a notice of default and right to cure in accordance with Section 51.002(d) and neglecting to follow the requirements for providing notice of sale as outlined in Section 51.002(b). With respect to the notice of default and right to cure under Section 51.002(d), Plaintiff maintains

---

[6] In their Motion for Summary Judgment and Brief in Support, Defendants address Plaintiff's allegations by identifying distinct claims for (1) improper notice of foreclosure in violation of Section 51.002 of the Texas Property Code and (2) breach of contract. Doc. 39, Defs.' Br. 5–6, 12–13. However, Defendants' arguments with respect to the claim for breach of contract repeatedly refer to the arguments and evidence presented in their section on Plaintiff's claim for violation of the Texas Property Code. *Id.* In fact, Defendants conflate the notice requirements set forth in Section 51.002 of the Texas Property Code and those established by the Deed of Trust. The Court also notes that Plaintiff's claim for breach of contract is based on the alleged breach of the terms of the Deed of Trust. Am. Compl. 9–12. Therefore, the Court first considers Plaintiff's claim for a violation of Section 51.002 of the Texas Property Code, reviewing the arguments presented in Defendants' section on this claim. The Court then turns to the breach of contract claim and examines the arguments and evidence Defendants present in their section on breach of contract as well as those pertaining to compliance with the Deed of Trust, as submitted in their section on the alleged violation of the Texas Property Code.

there is no evidence that BONY sent the notice of default by certified mail, as is required by the statute. Am. Compl. 12.[7] Plaintiff also alleges that "[t]here is no evidence that [BONY] complied with the common law requirements that a Notice of Intent to Accelerate be sent to Borrower twenty (20) days prior to the sale." *Id.* at 5. Regarding the notice of sale, Plaintiff similarly contends that there is no evidence of BONY's compliance with Section 51.002(b) of the Texas Property Code. *Id.* at 4–5. In their Motion for Summary Judgment and Brief in Support, Defendants insist that they have complied with the statutory notice requirements. Doc. 39, Defs.' Br. 5–6.

Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. In particular, Section 51.002(d) provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer . . . shall serve a debtor in default . . . with written notice by certified mail stating that the debtor is in default . . .  and giving the debtor at least 20 days to cure the default before notice of the sale can be given." Tex. Prop. Code. § 51.002(d). Additionally, though the Texas Property Code does not require that a notice of intent to accelerate or a notice of acceleration be sent prior to a foreclosure sale, Texas common law does impose such obligations. *See Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233–34 (Tex. 1982) (explaining that

---

[7] Though Plaintiff alleged violations of the Texas Property Code's notice requirements throughout his Original Complaint (doc. 17-1), the distinct claim for violation of Section 51.002(d) of the Texas Property Code appears for the first time in his Amended Complaint (doc. 34), which Plaintiff was granted leave to file in order to overcome the pleading deficiencies stated in the Court's Order (doc. 27) on Defendants' Motion to Dismiss (doc. 21). In his Original Complaint, Plaintiff did not expressly articulate the claim for violation of Section 51.002(d), but he did allege that Defendant BONY failed to "send[] Notice to Borrower via certified mail" and repeatedly asserted that Defendants violated the Texas Property Code. *See* Doc. 17-1, Orig. Compl. 4–11. Furthermore, in their Motion for Summary Judgment, Defendants fully address the merits of the claim that they violated Section 51.002(d) of the Texas Property Code, and they do not raise issues as to its inclusion in Plaintiff's Amended Complaint. Defs.' Br. 5–6. For these reasons, the Court considers Plaintiff's claim for violation of Section 51.002(d) as well as the arguments and evidence Defendants present in opposition to its merits.

a notice of intent to accelerate provides the debtor "an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure" and that a notice of acceleration "cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable.").

Section 51.002(b) states that notice of sale, in turn, must be given at least twenty-one days before the date of the sale by: (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property is sold; (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and (3) serving written notice of the sale by certified mail on each debtor who, according to the mortgage servicer of the debt, is obligated to pay. *Id.* §§ 51.002(b)(1)–(3).

The statute clarifies that "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address . . . ." *Id.* § 51.002(e). Further, an "affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." *Id.* Actual notice of default or sale is not required. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). Therefore, a party foreclosing on property is not required to demonstrate that the debtor actually received the necessary notice. *Id.*

In support of their argument that they have complied with Section 51.002(d) of the Texas Property Code with respect to the notice of default, Defendants provide a copy of a letter addressed to Plaintiff, dated November 2, 2005, which notifies him of his default and informs him that he can cure the default by tendering $3,089.42 by December 2, 2005. Defs.' Ex. A-5, APP 030–031, Notice of Default. The letter further states that if the default is not cured by this date, the debt under the

note will be accelerated (thus satisfying the common law requirement that a notice of intent to accelerate be provided). *Id.*; *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d at 233–34. Along with this letter, Defendants offer the affidavit of Lakesha Battle, Bank of America's Operations Team Manager, in which she describes the document as a business record and declares that "[o]n or about November 2, 2005, Countrywide Home Loans notified Plaintiff that he was in default" and informed him of the actions required to cure the default. Defs.' Ex. A, APP 001–002, Decl. of Lakesha Battle. Defendants further present a letter addressed to Plaintiff, dated March 6, 2012, which informs him that, as a result of his uncured default, his loan has been accelerated and foreclosure proceedings will be initiated (thus satisfying the common law requirement that a notice of acceleration be provided). Ex. B-1, APP 034, Notice of Acceleration; *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d at 233–34.

To demonstrate their adherence to the notice of sale requirements outlined in Section 51.002(b) of the Texas Property Code, Defendants present a document titled "Notice of Substitute Trustee's Sale" dated June 29, 2012. Defs.' Ex. B-2, APP 035, File Stamped Notice of Sale. The document describes the Property as well as the current mortgagor and mortgagee, details the time and manner of the Property's upcoming foreclosure sale, and bears a stamp indicating that it was filed with the Dallas County Clerk's Office in July 2012. *Id.* Though the document lists Plaintiff as mortgagor, it is not addressed to him and carries no indication that it was sent to him. *Id.* Defendants also present the affidavit of Janice Bergthold, Senior Vice President of ReconTrust Company, N.A. ("ReconTrust"), the party engaged by Bank of America to initiate foreclosure proceedings. Defs.' Ex. B, APP 032–033, Decl. of Janice Bergthold. The affidavit states that ReconTrust notified Plaintiff of the note's acceleration on March 6, 2012 and sent him a notice of sale on July 5, 2012, advising him that the sale of the Property would be held on August 7, 2012. *Id.* Defendants further offer as

evidence the Substitute Trustee's Deed, which indicates that the foreclosure sale of the Property was conducted on August 7, 2012. Defs.' Ex. B-3, APP 036–038, Substitute Trustee's Deed.

Based upon their submission of copies of the notices and accompanying affidavits attesting to the dates on which each notice was sent, Defendants assert that the notice of default informed Plaintiff of his default and gave him more than twenty days to cure it prior to the issuance of the notice of the sale, in accordance with Section 51.002(d) of the Texas Property Code. Defs.' Ex. A-5, APP. 030–031, Notice of Default; Ex. B, APP 032–033, Decl. of Janice Bergthold; Ex. B-2, APP 035, File Stamped Notice of Sale. They further insist that the notice of sale gave Plaintiff more than twenty-one days prior to the date of the sale, as is required by Section 51.002(b) of the Texas Property Code. *Id.* Despite the fact that the notice of default is dated over twenty days prior to the issuance of the notice of sale and that the notice of sale, in turn, was filed with the Dallas County Clerk's Office over twenty-one days prior to the sale, neither the copies of the notices nor the supporting affidavits offered by Defendants bear any indication that the notices of default and sale were sent by certified mail, as is required pursuant to Sections 51.002(d) and 51.002(b) of the Texas Property Code.[8] Crucially, Defendants do not even argue in their briefing that they sent these

---

[8] The Court also notes that Defendants' briefing and the evidence they provide in support of their arguments contain several discrepancies with respect to the dates on which the notices were sent, casting further doubt on the suitability of summary judgment on Plaintiff's claim with respect to the notice of sale. In one section of their briefing, Defendants allege that the notice of sale was sent on August 5, 2012; in another, they allege that it was sent on June 29, 2012. *Compare* Defs.' Br. 3 (stating that ReconTrust sent Plaintiff a copy of the notice of sale on or about August 5, 2012) *with* Defs.' Br. 6 (stating that the notice of sale was sent on June 29, 2012). The affidavit presented in support of the notice of sale cites yet another date of the mailing of the notice of sale—July 5, 2012. *See* Defs.' Ex. B, APP 033 (stating that ReconTrust sent Plaintiff the notice of sale on or about July 5, 2012). A similar discrepancy exists between Defendants' assertion that the notice of default was sent "[o]n or about October 2, 2005" and the affidavit accompanying the notice of default, which states that the notice was sent "[o]n or about November 2, 2005." Defs.' Ex. A, APP 002. The discrepancy with respect to the notice of default, however, is not critical, as Defendants' Brief elsewhere states that notice of default was sent on November 2, 2005, and the notice of default is similarly dated November

notices by certified mail. Instead, Defendants emphasize that compliance with the Texas Property Code does not depend on whether a debtor actually receives the requisite notices, but on whether there is evidence demonstrating that such notices were sent as required by the statute. Defs.' Br. 5. However, this reiteration of the law is of little import to Defendants' argument, as Plaintiff does not base his claim on his alleged failure to receive the notices, but rather contends that there is no evidence to indicate Defendants' compliance with the statutory requirements. Am. Compl. 12. Furthermore, Defendants do not allege that Plaintiff conceded to having received the notices of default and sale, and the Court is unable to discern any evidence revealing such an admission.

In a further attempt to demonstrate that the notices of default and sale were sent in compliance with Sections 51.002(d) and 51.002(b) of the Texas Property Code, Defendants present the Substitute Trustee's Deed and argue that it confirms Plaintiff's receipt of the requisite notices prior to foreclosure. Defs.' Ex. B-3, APP 036–038, Substitute Trustee's Deed. However, the Substitute Trustee's Deed is neither a notice nor a document evidencing Plaintiff's receipt of a notice; instead, it merely summarizes some of the actions taken prior to the Property's sale, stating that "Mortgagee, through the Mortgage Servicer, declared that [Plaintiff] defaulted in performing the obligations of the Deed of Trust" and that "[n]otices stating the time, place and terms of the sale of the property were mailed, posted and filed, as required by law." *Id.* The Substitute Trustee's Deed describes the issuance of a notice of sale, but it neither mentions that a notice of default was sent, nor does it state that Plaintiff received such notice. Appended to the Substitute Trustee's Deed is the affidavit of Carolyn Holleman, an employee of substitute trustee ReconTrust, in which she

---

2, 2005. *See* Defs.' Br. 6; Defs.' Ex. A-5, APP 030.

declares that "proper notice of default was served prior to acceleration of the indebtedness" and that all obligations and duties "were performed in the manner required by law." *Id.* at APP 038. Defendants cite to this affidavit in a general manner; they make no effort to direct the Court to the pertinent language or clarify whether this declaration purports to explain that the notices were sent to Plaintiff by certified mail on specific dates.

Though the Substitute Trustee's Deed and its accompanying affidavit state that certain aspects of the foreclosure process were conducted as "required by law," such a vague assertion that an action comports with the "law" is conclusory and provides no evidence that the Court can examine in order to determine whether the notices truly were sent "in the manner required by law." Consequently, in the absence of other filings demonstrating that the notices were sent to Plaintiff by certified mail on the stated dates, the Court cannot rely on this documentation as prima facie evidence of service. *Id.*; Tex. Prop. Code § 51.002(e); *see Kaldis v. Aurora Loan Servs.*, 424 S.W.3d 729, 733–36 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (finding that a genuine fact issue existed as to whether notice sent in accordance with the Texas Property Code where a defendant moving for summary judgment submitted the notices allegedly sent to debtors as well as an affidavit detailing its customary practices in notifying debtors of their foreclosure proceedings but did not refer to the receipt-for-certified-mail form or the return-receipt form); *cf. Thompson v. Bank of America, N.A.*, — F. Supp. 2d —, No. 3:13-CV-2120-B, 2104 WL 1373505, at *4 (N.D. Tex. 2014) (finding that notice was sent in accordance with the Texas Property Code where a defendant moving for summary judgment relied on an affidavit describing when notices were sent and citing to documents containing a receipt-for-certified-mail form).

In light of Defendants' failure to provide competent evidence demonstrating that they sent

Plaintiff notices of default and sale by certified mail in compliance with Section 51.002 of the Texas

Property Code, the Court **DENIES** Defendants' motion for summary judgment with respect to this

cause of action.

B.     *Breach of Contract*

Plaintiff's claim for breach of contract is based on his assertion that Defendants breached the

notice requirement included in Paragraph 22 of the Deed of Trust. Am. Compl. 9–12; doc. 17-3, Pl.'s

Ex. A-2, Deed of Trust. Specifically, he claims that Defendants breached the requirement that

notice of default be sent prior to acceleration, emphasizing the following language in Paragraph 22

of the Deed of Trust:

> **22. Acceleration; Remedies.** Lender shall give notice to Borrower
> prior to acceleration following Borrower's breach of any covenant or
> agreement in this Security Instrument . . . . The notice shall specify:
> (a) the default; (b) the action required to cure the default; (c) a date,
> not less than 30 days from the date the notice is given to Borrower,
> by which the default must be cured; and (d) that failure to cure the
> default on or before the date specified in the notice will result in
> acceleration of the sums secured by this Security Instrument and the
> sale of the Property. The notice shall further inform Borrower of the
> right to reinstate after acceleration and the right to bring a court
> action to assert the non-existence of a default or any other defense of
> Borrower to acceleration and sale.

*Id.* at 10 (quoting Deed of Trust ¶ 22).

Plaintiff also contends there is no evidence that BONY adhered to Paragraph 22 of the Deed

of Trust in providing a notice of sale prior to foreclosure. *Id.* at 4–5. According to the Deed of Trust,

the lender was to post and file a notice of sale twenty-one days prior to the sale "as provided by

Applicable Law," "mail a copy to the Borrower in the manner prescribed by Applicable Law," and

conduct the sale in a public venue within a stated period of time. *Id.* at 5; Deed of Trust ¶ 22. The

Court notes that the repeated reference to the notice requirements as outlined in "Applicable Law" incorporates Section 51.002 of the Texas Property Code into the Deed of Trust. *See Crucci v. Seterus, Inc.*, No. EP-13-CV-317-KC, 2013 WL 6146040, at *6 (W.D. Tex. Nov. 21, 2013) (slip copy).

Plaintiff alleges other flaws in the institution of the foreclosure proceedings, noting that there is "no evidence that any party identified as 'Lender' satisfied the mandatory terms" of the Deed of Trust. *Id.* at 11. Plaintiff next highlights language in the Deed of Trust that explains that "'Lender' indicates any holder of the Note who is entitled to receive payments under the Note." *Id.* He then asserts that "[t]here is no evidence that any entity identified as 'Lender' was ever 'entitled to receive payments under the Note.'" *Id.* at 12. Plaintiff further maintains that "there is no evidence" that BONY, AWL (both of which Plaintiff identifies as "Lenders"), or any assignee provided him with notice thirty days prior to acceleration, as is required under Paragraph 22 of the Deed of Trust. *Id.*

Defendants argue that Plaintiff's claim for breach of contract fails because "Plaintiff was sent all the required pre-foreclosure notices in a timely manner, and Plaintiff was afforded ample opportunity to cure his default." Defs.' Br. 13. Defendants further maintain that Plaintiff cannot prevail because he has not suffered damages as a result of the alleged failure to send notices. *Id.* They present Plaintiff's loan payment history and argue that "Plaintiff's loan was nearly four years delinquent at the time of the August 2012 foreclosure sale." *Id.*; Defs.' Ex. A-4, Loan Payment History. Defendants thus claim that "Plaintiff has lived in the Property essentially rent free for nearly five years." Defs.' Br. 13.

To prevail on a breach of contract claim, a plaintiff must demonstrate "(1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d

411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Where, as here, the alleged contractual obligation to provide notice presupposes the recipient is already in breach of his contractual obligations, failure to provide notice is nonetheless actionable. *See Hernandez v. U.S. Bank, N.A.*, No. 3:13-CV-2164-O, 2013 WL 6840022, at *6 (N.D. Tex. Dec. 27, 2013) (slip copy).

With respect to the notice of default prior to acceleration, review of the summary judgment evidence shows that Defendants were in fact in compliance with Paragraph 22 of the Deed of Trust. Defendants present the notice of default, dated November 2, 2005, which was addressed to Plaintiff and specified: (1) that Plaintiff was in default; (2) that Plaintiff could cure the default by paying $3,089.42 plus any additional charges, payments, or fees to Countrywide Home Loans (referred to throughout the pleadings as AWL); (3) that the default was to be cured on or before December 2, 2005; and (4) that failure to cure the default by the specified date would result in acceleration of the debt and initiation of foreclosure proceedings. Defs.' Ex. A-5, APP 030, Notice of Default. The accompanying affidavit further asserts that this notice was sent to Plaintiff on November 2, 2005. Defs.' Ex. A, APP 002, Decl. of Lakesha Battle. The notice of default therefore informed Plaintiff of the actions required to cure the default and provided him with thirty days to do so, as Paragraph 22 of the Deed of Trust requires. Furthermore, this notice of default was sent several years prior to the notice of acceleration, dated March 6, 2012. Defs.' Ex. B-1, APP 034, Notice of Acceleration. Accordingly, Defendants have introduced sufficient evidence to demonstrate that they have not breached the terms of the Deed of Trust with respect to the notice of default.

Regarding the notice of sale, scrutiny of the evidence presented does not indicate that Defendants complied with Paragraph 22 of the Deed of Trust. The Court remarks that "[b]y referring repeatedly to the notice requirements established by "Applicable Law," this section of

Paragraph 22 of the Deed of Trust incorporates the notice requirements of Section 51.002 of the Texas Property Code by reference. *See Crucci v. Seterus, Inc.*, 2013 WL 6146040, at *6. As previously noted, Defendants have failed to present competent evidence demonstrating their compliance with the Texas Property Code's notice of sale requirement. Though the notice of sale and its accompanying affidavit do indicate that it was filed with the Dallas County Clerk's Office at least twenty-one days prior to the date of the sale, the document does not meet all the requirements set forth in Section 51.002(b) of the Texas Property Code. *See* Defs.' Ex. B, APP 033 (stating that ReconTrust filed the notice with the Dallas County Clerk on July 16, 2012, which is over twenty-one days prior to the August 7, 2012 sale of the Property). Even though the affidavit accompanying the notice of sale states that ReconTrust sent Plaintiff a copy of the notice of sale on or about July 5, 2012, the notice was not addressed to Plaintiff and bears no indication that it was sent to him. *Id.* Moreover, the notice of sale, the accompanying affidavit, as well as the Defendants' briefing all fail to state that the notice was sent via certified mail.[9] Consequently, Defendants have not introduced sufficient evidence  to establish that Plaintiff's breach of contract claim with respect to the notice of sale is unfounded.

With regard to Plaintiff's brief argument that there is "no evidence that any party identified as 'Lender' satisfied the mandatory terms" of the Deed of Trust, the Court notes that Plaintiff himself refers to AWL as "Lender" in his Amended Complaint. *See* Am. Compl. 12 (stating that "there is

---

[9] The Court reiterates the concerns expressed in note 8, *supra*, in which it noted that Defendants' briefing and the evidence they provide in support of their arguments contain several discrepancies with respect to the dates on which the notices were sent. The inconsistencies in Defendants' arguments and evidence raise issues that make summary judgment on Plaintiff's breach of contract claim with respect to the notice of sale unwarranted. *See* note 8, *supra*.

no evidence that the Lender, i.e., American Wholesale Lenders [sic] . . . provided Borrower with Notice"). Though the notice of default offered as evidence by Defendants was issued by Countrywide Home Loans Services, this entity conducts business under the name America's Wholesale Lender ("AWL"). *See* Defs.' Ex. A-5 APP 30. For these reasons, and in light of Plaintiff's failure to either articulate its contention fully or provide evidence to support it, the Court finds Plaintiff's argument to be without merit.

Defendants do not explicitly address Plaintiff's remaining argument that any entities named as "Lenders" do not truly qualify as such under the Deed of Trust's definition of "Lender" as one who is "entitled to receive payments under the Note." Am. Compl. 12. However, Defendants offer as evidence the Note, which clearly designates the lender as "Countrywide Home Loans, Inc., doing business under the fictitious business name of America's Wholesale Lender."  Defs.' Ex. A-1, APP 005. Defendants further provide evidence of the Assignment of the Deed of Trust to BONY. Defs.' Ex. A-3, APP 021–022. The Court therefore concludes that summary judgment evidence disproves Plaintiff's argument.

Having found that Defendants have offered sufficient evidence demonstrating that they have not breached the Deed of Trust with respect to the notice of default, but that they have failed to present such evidence with respect to the notice of sale, the Court turns to Defendants' argument that Plaintiff has not suffered damages as a result of the alleged failure to send notices because his "loan was nearly four years delinquent at the time of the August 2012 foreclosure sale" and that "Plaintiff has lived in the Property essentially rent free for nearly five years." Defs.' Br. 13; Defs.' Ex. A-4, Loan Payment History. Defendants cite to Plaintiff's Loan Payment History generally, without offering analysis or explanation as to its contents, thus giving the Court no way of assessing

- 20 -

Defendants' argument that Plaintiff has not suffered damages. *Id.* As the Court concluded in its Order (doc. 27) on Defendants' Motion to Dismiss (doc. 21), Plaintiff has alleged the necessary elements of a claim for breach of contract—that "Defendants breached their notice obligations under the Deed of Trust" and that "Plaintiff[] [was] injured as a result." Doc. 27 at 14. Defendants' cursory argument does not explain how the alleged five years of living at the Property "rent free" outweighs the damages that Plaintiff claims as a result of the foreclosure of his home. Given Defendants' burden to set forth evidence to prove that no genuine issue of material fact exists as to Plaintiff's claim, and given the Court's duty to view all evidence in the light most favorable to the non-movant, the Court is unable to conclude that Plaintiff has not suffered any damages. *See Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d at 991; *Chaplin v. NationsCredit Corp.*, 307 F.3d at 371–72.

For the foregoing reasons, the Court finds that Defendants have introduced competent summary judgment evidence indicating that they have complied with the terms of the Deed of Trust with respect to the notice of default, but that they have failed to introduce evidence disproving the breach of contract claim with respect to the notice of sale. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's breach of contract claim.

C.    *Declaratory Judgment*

Plaintiff seeks declaratory relief under the federal Declaratory Judgment Act ("DJA"), 28 U.S. § 2201. Am. Compl. 12–14. The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration . . . ." 28 U.S. § 2201(a). The DJA is a procedural device that does not create substantive rights. *Miller v.*

*CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591–92 (N.D. Tex. 2013). Further, a request for declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action. *Id.* The DJA provides district courts with broad discretion in deciding whether declaratory relief is appropriate. *See Falk v. Wells Fargo Bank*, No. 3:09-CV-678-B, 2011 WL 3702666, at *4 (N.D. Tex. Aug. 19, 2011); 28 U.S.C. §§ 2201–2202.

Plaintiff makes two requests for declaratory judgment: one against BONY, calling for it to reconvey title to the Property due to its failure to comply with the Deed of Trust; and one against Polymathic, insisting that its purchase of the Property at the foreclosure sale be declared invalid and demanding that it reconvey title to the Property. Am. Compl. 13–14. The Court examines each request for declaratory relief, in turn, below.

    1.    Declaratory Judgment against BONY

Plaintiff requests a declaration that BONY had no authority to sell the Property at the foreclosure sale because it failed to comply with the notice requirements of the Deed of Trust. Am. Compl. 13. Plaintiff asks the Court to declare that BONY is to "refund the purchase price to the buyer" and "reconvey title to Plaintiff." *Id.* Defendants maintain that Plaintiff's request must fail for two reasons. Defs.' Br. 13. First, Defendants argue that Plaintiff brings the claim with "unclean hands" because his "account was severely delinquent prior to foreclosure." *Id.* Arguing that "those who seek equity must do equity," Defendants insist that Plaintiff is not entitled to equitable relief, as he is in default of his contractual obligations. *Id.* Defendants then assert that, because summary judgment evidence disproves all of Plaintiff's causes of action, Plaintiff has no viable claims that could support a declaratory judgment. *Id.* at 14.

In support of their argument that Plaintiff brings the claim with "unclean hands," Defendants

refer the Court to *Lambert v. First National Bank of Bowie*, in which the court stated that "to get equity, [plaintiff] ha[s] to do equity" and explained that a plaintiff seeking rescission of the foreclosure sale of his property must tender the amounts due under the note and deed of trust. 993 S.W.2d 833, 835–36 (Tex. App.—Fort Worth 1999, pet. denied). Therefore, when faced with a request for a declaratory judgment based on a fault in the foreclosure proceedings, courts have explained that "[f]or a foreclosure sale to be set aside or cancelled, the mortgagor must tender the amounts due and owing under the note and deed of trust." *Falk v. Wells Fargo Bank*, 2011 WL 3703666, at *7 (citing *Lambert v. First National Bank of Bowie*, 993 S.W.2d at 835); *see also Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale."). Because there is no allegation or evidence that Plaintiff had tendered the amount due and owing under the Note and Deed of Trust, the Court declines to reverse the effect of the foreclosure sale. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiff's request for declaratory judgment.

> 2.     Declaratory Judgment against Polymathic

Plaintiff also seeks a declaratory judgment as to the standing of Polymathic, the entity that purchased the Property at the foreclosure sale held on August 7, 2012. Plaintiff claims that, because the foreclosure was performed in violation of the Deed of Trust, Polymathic has no interest in the Property. Am. Compl. 13. Plaintiff asks the Court to declare that Polymathic's "purchase price must be refunded by [BONY] and that Polymathic must either convey title to Plaintiff or that Polymathic must reconvey title to [BONY]," which is then to reconvey title to Plaintiff. *Id.* at 13–14. In a motion

for summary judgment filed independently of the remaining defendants in this action, Polymathic argues that Plaintiff's request for declaratory judgment is without merit because he has not alleged any cause of action against Polymathic that could form the basis for such equitable relief. Doc. 37, Def. Polymathic's Br. 3.

As this Court has previously noted, a request for a declaratory judgment cannot stand without a separate cause of action. *Thompson v. Bank of America*, N.A., — F. Supp. 2d —, 2014 WL 1373505, at *19. Plaintiff here has not alleged any cause of action against Defendant Polymathic, but rather seeks a declaration that its interests in the Property are void as a result of the remaining Defendants' alleged violation of the Deed of Trust. Such an argument does not present an actionable claim, because the alleged breach of contract for which Plaintiff seeks recovery could only have been committed by BONY and the remaining Defendants, not by Polymathic. *See W & L Ventures, Inc. v. E. W. Bank*, No. H-13-00754, 2014 WL 1248151, at *4 (S.D. Tex. Mar. 26, 2014) (finding that plaintiff's request for a judgment declaring any subsequent sale of a foreclosed property to defendant as invalid is not an independent cause of action, but rather a remedy based on the recovery on claims against other defendants). Without a viable cause of action against Polymathic, Plaintiff cannot pursue such a declaratory judgment as a remedy.

For the foregoing reasons, the Court finds that there is no cause of action to which Plaintiff's request for a declaratory judgment against Defendant Polymathic can attach. The Court therefore **GRANTS** Defendant Polymathic's motion for summary judgment with respect to this claim.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 39) is

**GRANTED in part** and **DENIED in part**. The Court **GRANTS** Defendants' Motion with respect to Plaintiff's request for declaratory relief and **DENIES** it with respect to Plaintiff's claims for violation of the Texas Property Code and breach of contract. The Court therefore **ORDERS** Plaintiff's request for declaratory judgment against Defendants BONY, Bank of America, AWL, and MERS **DISMISSED WITH PREJUDICE.**

Defendant Polymathic's Amended Motion for Summary Judgment (doc. 37) is **GRANTED.** The Court therefore **ORDERS** Plaintiff's claim against Polymathic **DISMISSED WITH PREJUDICE.** Accordingly, the Court declares Polymathic's Motion for Entry of Judgment by Default (doc. 43) against Plaintiff **MOOT.**

The Court's Scheduling Order (doc. 18), entered on December 10, 2013, remains in effect. Accordingly, trial will proceed on December 1, 2014, as scheduled.

**SO ORDERED.**

**SIGNED: October 28, 2014.**

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 25 -